483 F.Supp. 1050 (1979)
Rebecca Mae CROSS, Plaintiff,
v.
UNITED STATES POSTAL SERVICE et al., Defendants.
No. 77-613C(1).
United States District Court, E. D. Missouri, E. D.
December 19, 1979.
*1051 Michael J. Hoare, Chackes & Hoare, St. Louis, Mo., for plaintiff.
Bruce D. White, Asst. U. S. Atty., St. Louis, Mo., for defendants.

MEMORANDUM
WANGELIN, Chief Judge.
The above entitled action is brought pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Plaintiff, a black female, contends that defendants discriminated against her because of her race, and because of a prior felony conviction.
After consideration of the testimony adduced at trial, the exhibits introduced in evidence, the briefs of the parties and the applicable law, the Court hereby makes and enters the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such, and any conclusion of law applicable as a finding of fact is adopted as such.

Findings of Fact
1. Plaintiff Rebecca Mae Cross is a black female residing within the Eastern District of Missouri. Plaintiff filed an application dated April 22, 1975 with the U. S. Postal Service's St. Louis Postal Data Center (PDC) for the position of Data Conversion Operator (keypunch operator).
2. The Data Conversion Operators are employed to transfer information from Postal Service documents to keypunch cards and computer discs, utilizing "card punch" machines and "key-to-disc" machines. The Postal Data Center is a computer operations center responsible for making payments of millions of dollars per week for the Postal Service. The Data Conversion Operators at the national financial center keypunch all Postal Service financial reports that come into the Postal Data Center. Using various types of machines they process the Postal Service's bills and issue checks for vehicle hires, air mail, uniform allowances and money order redemptions.
3. The Postal Service application inquires as to the applicant's criminal record. The application includes the following question:
20. Have you ever been convicted of an offense against the law or forfeited collateral, or are you now under charges for any offense against the law? (Include charges to which a guilty or nolo contendere plea was entered or, if convicted, a sentence of probation was imposed. You may omit: (1) traffic violations for which you paid a fine of $30.00 or less; and (2) any offense committed before your 21st birthday which was finally adjudicated in a juvenile court or under a Youth Offender law.)

*1052 While in the military service were you ever convicted by special or general court-martial?
If your answer to either question is "Yes", give details in Item 23. Show for each offense: (1) date; (2) charge; (3) place; (4) court; and (5) action taken. NOTE  a conviction does not automatically mean you cannot be appointed. What you were convicted of, and how long ago, are important. Give all of the facts so that a decision can be made.
4. Plaintiff responded to question 20 as follows:
# 209/64 Selling $55 worth of Heroin = a first offender  non drug user  given maximum 20 yrs. I confined 10 yrs. 2 mos. & 4 das. released 1/29/75 after Congress gave us a parole date in 10/74. The punishment I received as a first offender out sceeds (sic) the Crime  I've paid more than enough for a crime or act I've done, to keep me from decent employment because of something that happened 10 yrs. ago would be more punishment.
5. Plaintiff did not list her conviction for assaulting a federal narcotics police officer. She did not, therefore, properly complete the application and could have been subject to discharge if she had been hired. The Postal Service application also includes this warning above the signature block:
ATTENTION: READ THIS PARAGRAPH CAREFULLY BEFORE SIGNING THIS FORM
A false or dishonest answer to any question in this Statement may be grounds for not employing you or for dismissing you after you begin work, and may be punishable by fine or imprisonment. (U.S.Code, Title 18. Sec. 1001). All the information you give will be considered in reviewing your Statement and is subject to investigation. A false answer to Item 16 a. or b., could deprive you of your right to an annuity when you reach retirement age in addition to the penalties described above.
CERTIFICATION: I certify that all of the statements made in this application are true, complete, and correct to the best of my knowledge and belief and are made in good faith.
 ____________________________________________
 SIGNATURE
 OF APPLICANT DATE SIGNED
 (signed) Rebecca Mae Cross 4/22/75
6. Plaintiff listed her special qualifications and skills on the application as Key Punch Operator and Typing at Alderson, West Virginia. Also at the end of the application, marked with an asterisk, she placed the following notation "I have over 5 yrs. experience as a Keypuncher." This is the total of her listed experience.
7. The Postal Data Center has no policy of rejecting applications with conviction records. The Postal Service P-11 Handbook, "Personnel Operations", contains Part 313 pertaining to "Personal Suitability". It explains at 313.2(b) that an applicant might be disqualified for "Criminal or other conduct of such nature which, if engaged in by a postal employee, would undermine the efficiency of the Postal Service."
8. Section 313.4 of the Postal Operations Handbook, "Criminal Convictions" states that no consideration should be given to arrest records nor should any inquiries be made as to arrests that have not resulted in convictions.
9. Section 313.43 "Conviction Records" reads:
b. If the applicant's conviction record shows that, in recent years, the individual has been convicted of a felony or a misdemeanor involving acts of violence or dishonesty, or of an unusual number of misdemeanors, the applicant should normally be removed from the register. If, for any reason, the installation head believes that special consideration should be given to the applicant, the entire file should be submitted by him/her to the Regional Director of Employee Relations with reasons for recommending appointment. If the said regional authority concurs with the recommendation of the installation head, the regional authority will authorize the appointment. (Emphasis added).
*1053 10. The Postal Data Center did not remove plaintiff's name from the register. It did, in fact, consider her for employment, despite her conviction record.
11. No evidence was introduced showing that the Postal Data Center has ever rejected any application due to conviction records, or maintains a policy prohibiting the hiring of an applicant with a conviction record. It has, in fact, hired four applicants with convictions, three of which this Court would consider extremely serious.[1]
12. Plaintiff took the examination given to keypunch operator applicants and received a rating of 85.0 and was placed upon the register based solely upon this rating. The exhibits herein indicate a range of 75.0 to 95.5 on the applicable Data Conversion Operator hiring worksheet. The test upon which this score was based is basically a typing test. For this reason, applicants were given an additional keypunch test when called in for an interview for a position opening.
13. The Postal Data Center's hiring procedures for Data Conversion Operators consisted of calling in the applicants for interviews in the order that they appeared on the register. The applicant would then be interviewed by either Deloris Stewart (White Female), Ann Lenk (White Female) or Sandra Scruggs (Black Female). The testimony is somewhat less than clear, but it appears that Ann Lenk conducted the first two interviews and Mrs. Gross or Sandra Scruggs conducted the third.
14. After the interview, the applicant would be given a keypunch test using the actual materials used by the Postal Data Center.
15. After the interviews, Deloris Stewart would discuss the applicants' qualifications with Ann Lenk and Sandra Scruggs and then make a recommendation to her superior as who was to be hired. Her recommendations were always accepted by her superiors. Though qualified in an abstract sense, plaintiff did not receive a positive recommendation in that each consideration resulted in the hiring of others. This subjective judgment that other applicants were "better" or "more qualified", while comprising a variety of factors, was not based upon plaintiff's race or prior conviction.
16. An applicant for a position with the Postal Data Center is given three considerations to be hired and Part 265.5, 6 of the P-11 Handbook describes how this elimination process works. Essentially, for each consideration the applicant is compared to two other applicants and the best of the three is chosen. Part 265.2 provides that "An eligible who has been considered three times for the same job category, and not selected, need not be considered again for that job category. The testimony indicated that the duration of consideration could be extended to two years by written request, but this did not effect the three consideration rule.
17. The hiring worksheet for the first two considerations of the plaintiff is dated May 22, 1975. For this position she was interviewed by Ann Lenk and given the keypunch test by Sandra Scruggs. She passed the keypunch test but would not or could not elaborate during the interview concerning her keypunch experience. She could not even name the machine(s) she had worked on. Ms. Lenk requested the plaintiff to write out her experience so that it could be evaluated, but this was never done. Plaintiff did not mention any of her schooling. Ms. Lenk then recommended to Deloris Stewart that Mary Frazier (Black female) and Diane Michael (White female) be offered positions because they were better candidates and had more experience. According to the example given in Part 265, this should have constituted consideration of the plaintiff for two positions.
18. Plaintiff did not create a favorable impression during the employment interview with Ms. Lenk. She persisted in her belief that she would not be hired because *1054 of her conviction. Ms. Lenk replied that it did not make any difference to her and it was not a factor in her assessment of plaintiff. The plaintiff's application, as indicated in finding 4., supra, also exhibits this consistent attitude that she was affirmatively telling the Postal Service that she was not to be denied a job due to her conviction record.
19. Mary Frazier had received her keypunch training at the Manpower Training School in 1969. She had six years of keypunch experience. She had a register rating of 82.0. Diane Michael received her keypunch training at Missouri Business College, St. Louis, Missouri, in 1970. Her application shows a total almost five years as a keypuncher or keypunch supervisor. Her register rating was 82.0. She declined the job.
20. When Diane Michael declined the job offer, Mable Blackman (Black female) was transferred from the Veterans Administration as a federal career employee. This would not be a third consideration for the plaintiff under Part 265 as this appointment involved a transfer from another federal agency, not the hiring of an applicant from the register.
21. Plaintiff was next considered in June or July of 1975. She was again interviewed and tested by Ms. Lenk and Ms. Scruggs respectively, although the interview was very short due to the fact that plaintiff had been interviewed only a short while before.
22. This appointment went to Joanne Widdows (White female). On her application she listed a total of approximately five years keypunch experience in addition to various bookkeeping duties. Her application was very complete, listing specific keypunch duties and specific machines that she had worked on. Her experience included work on machines that were in use at the Postal Data Center. She was rated 78.0 on the register. As Ms. Widdows was hired from the register this would have been plaintiff's third and last consideration, according to Part 265.
23. The Postal Data Center did not hire from the register for the period from about November, 1975 to November, 1976 due to a Postal Service imposed hiring freeze. During this period, it hired only temporary employees, reinstated former Postal Data Center employees, and qualified transfers from Post Offices or other government agencies.
24. Plaintiff was a former St. Louis Post Office employee but her application lists no keypunch experience during this period. She had been fired from this position in 1961. Also, she was not eligible to be reinstated, and thus bypass the register, as Part 261.3(e)(1) of the Postal Operations Handbook establishes eligibility for reinstatement for only a three year period after separation.
25. Plaintiff's application indicated she would not accept temporary work and she never communicated a different sentiment, if she had one, to either Ms. Lenk or Ms. Scruggs, the persons who were responsible for hiring her. She did inquire as to being hired for temporary work with a John Munda some time after her third interview.
26. In January, 1976 Betty Oberkrom and in April, 1976 Ruth Meriwether transferred from the Postal Service's Bulk Mail Center to Data Conversion Operator positions at the St. Louis Postal Data Center.
27. On or about April 12, 1976, Geraldine Smith was reinstated into a Data Conversion Operator position at the St. Louis Postal Data Center. Ms. Smith was a former Postal Data Center keypunch operator and as such, was entitled to reinstatement.
28. In May, 1976, the Postal Data Center received an oral authorization from Postal Service Headquarters to lift the hiring freeze. On this basis, interviews were conducted of applicants on the register, including plaintiff. Plaintiff was interviewed by a Black female. Also interviewed in this group was a Vanessa Kelly. This authorization was rescinded, however, and no hiring resulted.
29. The hiring freeze was lifted in November, 1976, and the Postal Data Center sent out interview notices to those eligibles *1055 on the register who were not interviewed in May of 1976. These two groups of eligibles were then considered for the next hiring in November, 1976.
30. The November 17, 1976 hiring worksheet for five vacancies indicates that plaintiff, along with Vanessa Kelly, did receive consideration for hiring. In accordance with the Postal Operations Handbook a "C" was placed next to their names on the register indicating that they had been considered. Kelly had a register rating of 84.0.
31. Using the "rule of three" (for each position there must be at least three candidates on the register and one of them must be selected), plaintiff, Kelly, and Carol Glaza (White female) were considered for the next position and Glaza received the appointment. This is actually the plaintiff's fourth consideration but the Data Center apparently considered it her third.
32. The Postal Data Center hired four additional Data Conversion Operators from this register in November, 1976. They include, in the order of selection:

Name Race-Sex
Theresa Rowell Black Female
Rosaland Luster Black Female
Zona Ferguson Black Female
Deborah Marczak White Female

33. The keypunch operators at the Data Center at the time plaintiff was rejected were all female. Out of a total of 38, there were 17 White and 21 non-White keypunch operators.

Conclusions of Law
The Court has jurisdiction of this action pursuant to 42 U.S.C. § 2000e-16. Defendant did not discriminate against plaintiff because of her race. Plaintiff has failed to make a prima facie case of discrimination due to her conviction record under the "disparate impact" theory set forth in Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), in that she has failed to establish that the Postal Data Center in fact had a policy of rejecting applicants with conviction records.
Plaintiff has made a prima facie case of race discrimination insofar as she was Black, qualified for the position, and defendant continued to seek applicants after rejecting her. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Defendant successfully rebutted the prima facie case by articulating a non-discriminatory reason for bypassing plaintiff in favor of other applicants with specific and circumstantial, see Furnco Construction Corp. v. Waters, 438 U.S. 567, 576-680, 98 S.Ct. 2943, 2949-2951, 57 L.Ed.2d 793 (1978), proof. No motivation for discrimination was shown.
Judgment will be entered for defendant with each party to bear its own costs and attorneys' fees.
NOTES
[1] Defendant has requested that the published opinion remove the names of these employees to protect their privacy.