**Rebecca Mae CROSS, Appellant,**

v.

**UNITED STATES POSTAL SERVICE; The Board of Governors of the United States Postal Service; M. A. Wright; R. E. Holding; Charles H. Codding; William A. Irvine; Crocker Nevin; Hayes Robertson; and Benjamin F. Bailar, Appellees.**

No. 80–1119.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1980.

Decided Jan. 27, 1981.

---

4. Because we affirm the order of the district court we need not reach the issues raised by Commercial's cross-appeal.

**410**

Kenneth M. Chackes, St. Louis, Mo., for appellant.

David G. Karro, Washington, D. C., for appellees.

Before HEANEY, ADAMS,* and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

Rebecca Mae Cross, a black woman, was convicted in 1964 of selling heroin and assaulting a federal narcotics officer. She was given a twenty-year sentence for the narcotics offense and eighteen months for the assault; she served ten years. While in prison, she was trained as a key punch operator and worked for over five years in that capacity. Shortly after her release in 1975, she took a competitive Postal Service examination for the position of key punch operator (data conversion operator) with the St. Louis Postal Data Center and received a score of 85. Thereafter, she made application for the position, was interviewed several times for existent vacancies and was rejected each time.

On June 7, 1977, Cross filed an action in the United States District Court, alleging that she had been denied employment by the Postal Service because of her race. She claimed a violation of section 717(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16(a). The case was tried to the district court in June, 1979. At trial, Cross advanced two theories in support of her discrimination claim: first, that the Postal Service's policy with respect to the employment of persons with criminal convictions had a greater impact on blacks as a class; and, second, that she was denied the key punch positions because of her race. The court ruled in favor of the defendant Postal Service on both theories.

I

Cross rested her disparate impact claim on the following language in the Handbook of the Postal Service:

An applicant might be disqualified for criminal or other conduct of such a nature which, if engaged in by a postal employee, would undermine the efficiency of the Postal Service.

Cross contended that, because statistical evidence shows that blacks in the United States are arrested, convicted and imprisoned for crimes in numbers disproportionate to their representation in the population, this policy operated to discriminate against blacks. The district court held that Cross had failed to make a prima facie case of discrimination under the "disparate impact" theory set forth in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28

* The HONORABLE ARLIN M. ADAMS, United States Circuit Judge for the Third Circuit Court of Appeals, sitting by designation.

L.Ed.2d 158 (1971), because she failed to establish that the Postal Data Center in fact had a policy of rejecting applicants who had been previously convicted.

■ We affirm the district court's holding that Cross failed to establish her theory of disparate impact; there is sufficient evidence in the record to support the trial court's determination. The record shows that persons with criminal records were hired by the Postal Service and Postal Service witnesses testified without equivocation that Cross was not rejected because of her conviction record, and that testimony was credited by the trial judge.

## II

To prove her claim that the Postal Service discriminated against her individually on account of her race, Cross relied on the test set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In that case, the Court held that a Title VII plaintiff could establish a prima facie case of racial discrimination

> by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.* at 802, 93 S.Ct. at 1824.

Once this prima facie case has been made out, the Court ruled, an inference of intentional discrimination is raised and the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* If the employer makes such an "articulation," the plaintiff must be "afforded a fair opportunity to show that [the employer's] stated reason for [the plaintiff's] rejection was in fact pretext [for the sort of discrimination

prohibited by Title VII]." *Id.* at 804, 93 S.Ct. at 1825; *see Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Kirby v. Colony Furniture Co.*, 613 F.2d 696 (8th Cir. 1980).

After reviewing the evidence presented by Cross and the Postal Service in this case, the district court determined that Cross had established a *"prima facie* case of race discrimination insofar as she was black, qualified for the position, and [the Postal Service] continued to seek applicants after rejecting her."[1] *Cross v. United States Postal Service*, 483 F.Supp. 1050, 1055 (E.D.Mo. 1979). The court concluded, however, that the Postal Service "successfully rebutted the *prima facie* case by articulating a nondiscriminatory reason for bypassing [Cross] in favor of other applicants with specific and circumstantial * * * proof." *Id.*

We agree with the district court that Cross established a prima facie case of intentional discrimination based on the guidelines set forth in *McDonnell Douglas*.[2] We cannot agree, however, with the ultimate decision of the district court. Its holding appears to be based on the testimony by the Postal Service that the persons hired were "better" than Cross. The court stated, "This subjective judgment that other applicants were 'better' or 'more qualified', while comprising a variety of factors, was not based upon [Cross'] race or prior conviction." *Cross v. United States Postal Service, supra*, 483 F.Supp. at 1053. It implied that the principal factors were (1) prior experience as a key punch operator, and (2) the impression created by Cross during her first employment interview.

The primary reason stated by the Postal Service for rejecting Cross—that those hired had more experience—has some validity when applied to the first rejections but has none when applied to her final attempt

---

1. We would add that several of the applicants who were offered positions or who were hired were white.

2. The Postal Service conceded at trial that Cross had made a prima facie case of race discrimination.

to obtain employment. The record demonstrates the fallacy of the Postal Service position.

Interviews for the position of key punch operators were ordinarily conducted for the Postal Service by Doloris Stewart or her assistant, Ann Lenk. Their recommendations as to whom should be hired were consistently accepted by the Postal Service. Stewart and Lenk testified that they made their recommendations primarily on the basis of the experience of the applicant. The following testimony of Lenk, who conducted the first two interviews with Cross, illustrates this fact clearly:

Q. After the interview you would put her and all applicants on a keypunch machine to see if they can actually operate a machine and keypunch?

A. Yes.

Q. And she was able to operate the keypunch machine?

A. Yes.

Q. And in your opinion was she qualified for the job?

A. Yes.

THE COURT: Let's get down to where we're going here. Did you or did you not make a recommendation to Doloris Stewart as to whether or not the plaintiff Rebecca Cross should be employed?

\* \* \* \* \* \*

THE WITNESS: I made recommendations. There were several applicants then, Your Honor, and I base my recommendations on their experience, the one with the most experience one, two, three—

The selection process ordinarily followed by the Postal Service in selecting key punch operators was as follows:

(1) Applicants were required to take a competitive examination and were ranked on the hiring register in accordance with the examination results.

(2) When a vacancy, or vacancies, occurred, the requisite number of names at the top of the register were referred to Stewart.

(3) Stewart gave the persons referred an examination on the key punch machines used in the office.

(4) The person passing the key punch examination and having the most experience as a key punch operator was considered to be the best qualified and was hired.

It can be argued that the above procedure was followed on two of the three occasions when Cross was interviewed for key punch positions in that the most experienced applicants were hired. Two vacancies occurred in St. Louis in May of 1975. Rebecca Cross was interviewed by Ann Lenk. Three other women, Dianne Michael, Mary Frazier and Crystal House were interviewed for the same vacancies. Ann Lenk recommended that Michael and Frazier be hired. Frazier accepted; Michael declined. House had no key punch experience. Lenk then attempted to arrange an interview with Nevada Johnson, who failed to appear for an interview. At that point, Mable Blackman, a computer operator for the Veterans Administration, was hired on Lenk's recommendation.[3] Another vacancy occurred in July, 1975. Cross was interviewed by Lenk for a second time. She again took and passed the machine operation examination. Cross was rejected again. Joanne Widdows, a white woman, was hired for the position. Frazier and Blackman both had more experience than Cross. Widdows probably had at least as much experience as Cross.

It is clear, however, that the hiring procedure outlined above was not followed when five key punch vacancies were filled by the Post Office in November, 1976.[4] Only one

3. Had the usual procedure been followed, Rebecca Cross would have been hired after Michael turned down the offer. We decline, however, to reverse the district court's finding that the failure to hire Cross at this point was not discriminatory. Mable Blackman was a black

woman who had more key punch experience than Cross.

4. From July of 1975 to November of 1976, a hiring freeze was in effect within the Postal Service and no new employees were hired. In May of 1976, however, the St. Louis Postal

of the applicants hired at that time was as experienced as Cross.[5] Cross had more than five years experience as a key punch operator. While she obtained the experience in a prison setting, the record reveals that the work that she did was demanding, that she had an excellent record on the job and was promoted to verifier. Her score on the competitive examination was five points or more higher than any of the operators hired in November of 1976, and she took and passed an examination on the key punch machines that were used by the Postal Service on each occasion that she was interviewed. Thus, nothing can be gleaned from the record in support of the contention that four of the five hired were better qualified than Cross for the position.

The second "nondiscriminatory" factor mentioned by the district court—Cross' performance during her interviews—also has no basis in this record. The specific complaint of the Postal Service is that Cross failed to detail, in her initial interview, the nature of her experience as a key punch operator; Lenk thus had no way of measuring the length and quality of Cross' experience and rejected her on that basis.[6] This assertion has little merit. Cross' written application stated that she had five years of key punch experience and Lenk testified that Cross discussed at least some types of

the machines she had used. Cross was interviewed on three occasions; if there were questions about her experience after the first interview, they could have been raised in the second and third interviews. There is absolutely no evidence in the record indicating that any questions as to Cross' experience were raised in the latter interviews. Moreover, if the Postal Service supervisors doubted the truth of Cross' application, they could have addressed an inquiry to the United States Bureau of Prisons. Had they done so, they would have been informed that the quality of her work was excellent and that she had the experience she claimed on her application.

■ Although neither of its specific reasons for refusing to hire Cross withstands scrutiny, the Postal Service appears to argue that it can rebut a prima facie case by simply stating that its practice was to hire the most qualified employees and that that practice was followed during the period in question. It cannot. While an employer has a right to select the most qualified employee, it cannot satisfy its burden of showing that it has in fact done so by a general statement that it hired the best qualified applicant. *International Bhd. of Teamsters v. United States*, 431 U.S. 324,

---

Service received oral assurances that the freeze would be lifted. Acting on the basis of that assurance, a number of applicants, including Cross, were interviewed and tested. Cross again passed the examination. No one was hired. In November of 1976, the hiring freeze was lifted and five operators were hired. Cross was again considered and rejected.

5. At some point during this controversy, a memorandum was filed in the Postal Service's record indicating that all five persons hired in November, 1976, had in excess of five years experience as key punch operators. This false record is further evidence of an intent to discriminate on the part of the Postal Service. The facts are as follows:

Carol Glaza, a white woman, had a maximum of two years and four months of experience as a key punch operator. Her score on the competitive examination was five points lower than that of Cross.

Deborah Marczak, a white woman, had a maximum of two years experience as a computer operator and received a score on the

competitive examination thirteen points lower than Cross.

Theresa Rowell, a black woman, had no more than four years and one month experience as a key punch operator; her score in the competitive examination was seven points less than that of Cross.

Zona Ferguson, a black woman, had only three years experience as a key punch operator and a score on the competitive examination some eleven points lower than that of Cross.

Rosaland Luster, a black woman, arguably had a few months more experience as a key punch operator than Cross. Her score on the competitive examination was nine points lower than that of Cross.

6. The district court suggests that an additional problem with Cross' interviews was that she conveyed to the interviewer the belief that she would not be hired. No witness mentioned Cross' attitude during the interviews, however, and no witness testified that her attitude had anything to do with her rejection.

342 n.24, 97 S.Ct. 1843, 1858 n.24, 52 L.Ed.2d 396 (1977). If an employer wishes to rely on the applicants' qualifications to rebut an inference of discrimination, it must produce legally sufficient proof that the person hired was in fact more qualified than the rejected plaintiff. *Burdine v. Texas Dept. of Community Affairs*, 608 F.2d 563, 567 (5th Cir. 1979), *cert. granted*, 447 U.S. 920, 100 S.Ct. 3009, 65 L.Ed.2d 1112 (1980); [7] *Turner v. Texas Instruments*, 555 F.2d 1251, 1255 (5th Cir. 1977). The rationale for requiring the defendant to come forward with some specific evidence is obvious: "a plaintiff cannot be expected to disprove a defendant's reasons unless they have been articulated with some specificity." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n.5 (1st Cir. 1979). As this Court has recently noted, "The employer bears the burden of showing by a preponderance of the evidence that the legitimate reason [for the employment practice] exists factually." *Vaughn v. Westinghouse Elec. Corp.*, 620 F.2d 655, 659 (8th Cir. 1980). The only reasons given for failing to hire Cross have no support in the record; absolutely no evidence was introduced that would show that the persons hired, at least in November of 1976, were more qualified than Cross. In fact, all proof is to the contrary, and the general, unsupported statement that other applicants were "better" does not serve to rebut Cross' prima facie case of discrimination.

▆▆▆ The Postal Service advances an additional argument on appeal which is, in substance, that even if Cross were better qualified and more experienced than some of the people hired, she is not entitled to recover because the record indicates that the Postal Service does not generally discriminate against blacks. The Postal Service supports this argument by pointing out that twenty-one of the thirty-eight key punch operators were nonwhite, and that five of the eight persons hired during the period in question were black. The argument, however, overlooks the fact that it is a violation of Title VII to discriminate on the basis of race against even a single person, regardless of the employer's general policy toward other minority group members. While it is true that statistical evidence of a nondiscriminatory hiring pattern has some relevance in negating an inference of discriminatory motive, such evidence does not, by itself, rebut the prima facie case of a specific individual in a "disparate treatment" case. This is particularly true in this case because Cross has made a strong prima facie showing of discrimination—indeed, the Postal Service conceded at trial that she had established a prima facie case—and, as noted earlier, the Postal Service has offered no legitimate reason for its failure to hire Cross. Consequently, the Postal Service's treatment of other minority individuals does not serve to rebut the inference of discrimination raised by Cross' prima facie case.

We hold that Cross has carried her burden of proving that she was denied employment on the basis of her race. The judgment of the district court is reversed and the matter is remanded with directions:

(1) To enter an order requiring the Postal Service to offer Cross the first vacancy in

---

**7.** According to the *United States Law Week*, *Burdine* presents the following questions to the Supreme Court on certiorari:

(1) Was court of appeals correct in holding that defendant in Title VII case must prove by preponderance of evidence that it relied on non-discriminatory reason in making challenged employment decision, or is defendant merely required to articulate nondiscriminatory reason for decision that plaintiff must prove to be pretextual? (2) Should finding of non-discriminatory motive by district court be upheld unless found to be clearly erroneous?

48 U.S.L.W. 3823 (June 17, 1980).

We need not decide these questions in this case, because whether the defendant has the burden of proving the factual existence of a nondiscriminatory reason, or whether the plaintiff must prove that the reasons given had no basis in fact and, therefore, were pretextual, Cross must prevail. *See Falcon v. General Tel. Co.*, 626 F.2d 369, 378–379 (5th Cir. 1980). It is clear from the record, regardless of who has the burden, that Cross had more experience and higher test scores than several of those who were hired; any implicit or explicit findings to the contrary by the district court are clearly erroneous.

the position of key punch operator in the St. Louis Office of the Postal Service.

(2) To determine the back pay to which Cross is entitled. This is to be computed on the basis of the difference between what Cross earned in the position she has held since November, 1976, and what she would have earned had she been hired at that time as a computer operator by the Postal Service.

(3) To determine and award reasonable attorney's fees and expenses to counsel for Cross for services rendered in the district court. *See Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).

Counsel for Cross will submit an affidavit to this Court within fifteen days of the date that this opinion is filed, setting forth what he considers to be reasonable attorney's fees for services rendered on appeal of this matter. The Postal Service will have ten days to submit a responsive affidavit.

Costs will be taxed to the Postal Service.