Merrimack
No. 82-361

E. D. SWETT, INC.

v.

NEW HAMPSHIRE COMMISSION FOR HUMAN RIGHTS
AND
LEONARD BRISCOE

December 30, 1983

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Joseph A. Millimet* on the brief and orally), for the plaintiff.

*Gregory H. Smith*, attorney general (*Peter T. Foley*, attorney, on the brief and orally), for the New Hampshire Commission for Human Rights.

*Upton, Sanders & Smith*, of Concord (*Katharine A. Daly* on the brief and orally), for Leonard Briscoe.

BROCK, J. The defendants, the New Hampshire Commission for Human Rights (commission) and Leonard Briscoe, appeal from a

Superior Court (*Cann*, J.) order approving a Master's (*Robert C. Varney*, Esq.) recommendation that awards of compensatory damages and counsel fees made against the plaintiff, E. D. Swett, Inc. (Swett), be set aside. Swett cross-appeals, arguing that the scope of judicial review by the superior court was too narrow and that the commission incorrectly applied the evidentiary standards and methodology for adjudicating disparate treatment in hiring. Swett contends therefore that, while the denial of compensatory damages and counsel fees should be affirmed, the commission's finding of discrimination and award of back pay to Briscoe should be reversed. For the reasons that follow, we affirm in part and reverse in part.

Mr. Briscoe is a black construction worker and carpenter. Swett is a bridge construction company engaged in construction work throughout New Hampshire. Briscoe worked for Swett as a laborer on a project in Hart's Location from July 1978 until November 1978, at which time he was laid off because of the seasonal character of construction work.

In the spring of 1979, Briscoe applied for work with Swett at its Lisbon job site. The date when Briscoe first applied at the Lisbon site in 1979 is disputed. Swett hires at the job site and does not use written applications. Both Swett's project superintendent, who has hiring authority, and its timekeeper recall that Briscoe first applied around the middle of May. Briscoe claims that he first applied around the end of March and then reapplied several more times between April and June of 1979. Each time, Briscoe contends, he talked to either the project superintendent or the timekeeper and was told there were no job openings.

In hiring employees, Swett has a policy of seniority preference; *i.e.*, someone who has worked for Swett is preferred to someone who has never worked for that company, assuming both are qualified for the job opening. In April, May, and June, Swett hired, in succession, two white male laborers and a white male carpenter, all of whom had never previously worked for Swett. Briscoe claims that, although he had not specified what type of work he was looking for at Lisbon, he had previously told Swett that he was qualified as a carpenter and so expected to be considered for either a laborer's or a carpenter's position. Swett claims that it did not know Briscoe was qualified as a carpenter.

In July 1979, Briscoe filed with the commission a charge of racial discrimination in hiring against Swett. After a hearing at which all parties presented evidence, the commission found in favor of Briscoe and ordered Swett to pay him back pay, compensatory damages, and attorney's fees.

Swett appealed the commission's finding of discrimination and its

award of compensatory damages and counsel fees to the superior court. In July 1982, the superior court upheld the commission's finding of unlawful discrimination, but set aside both the award of compensatory damages and the award of attorney's fees as being in excess of the commission's statutory powers.

The first issue raised by Swett in this appeal is the proper scope of review by the superior court of orders made by the commission. RSA 354-A:10 states in pertinent part: "The findings of the commission as to the facts shall be conclusive if supported by sufficient evidence on the record considered as a whole." Swett argues that this statute does not give the commission's findings a presumption of reasonableness, such as that found in RSA 541:13 governing appeals to *this* court from orders of certain administrative agencies. Rather, Swett contends, RSA 354-A:10 permits the type of review which exists under statutes governing the review of the suspension, revocation, or denial of licenses. *See Allard v. Power*, 122 N.H. 27, 28, 440 A.2d 450, 451 (1982); *Kozerski v. Steere*, 121 N.H. 469, 472, 433 A.2d 1244, 1245 (1981). Accordingly, Swett claims that the superior court may hear additional evidence. We disagree.

■ RSA 354-A:10 allows parties aggrieved by a decision of the commission to file a petition in the superior court requesting that it remit the case to the commission for the purpose of taking additional evidence if the party shows reasonable grounds for its failure to present such evidence originally. We believe that this statutory provision indicates a legislative intent that the superior court itself not be involved in taking further evidence. This provision of RSA 354-A:10 would be superfluous if we were to hold otherwise.

■■ We conclude that the scope of review envisioned under RSA 354-A:10 is analogous to that under RSA 541:13. *See Scarborough v. R.T.P. Enterprises, Inc.*, 120 N.H. 707, 710, 422 A.2d 1304, 1307 (1980); *Scarborough v. Arnold*, 117 N.H. 803, 809, 379 A.2d 790, 794 (1977). Based on the record before us, we hold that the superior court applied the correct standard of review in this case.

Swett next argues that the commission did not apply the correct evidentiary standards and methodology for proof of disparate treatment in hiring. The commission's application of an incorrect legal standard would constitute an error of law permitting the court to set aside the commission's order notwithstanding any presumption of propriety which may be given its fact-finding.

■ The United States Supreme Court has set forth the allocation of burdens and the order of presentation of proof in a private, non-class action alleging employment discrimination. *See, e.g., McDon-*

*nell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). We have applied these criteria to cases brought under RSA chapter 354-A. *See Scarborough v. Arnold*, 117 N.H. at 807–08, 379 A.2d at 793. Under this case law, Briscoe may make out a prima facie case of discrimination by showing (1) that he belonged to a minority; (2) that he applied for and was qualified for a job for which the employer was seeking applicants; (3) that despite his qualifications he was rejected; and (4) that after his rejection the position remained open and the employer continued to seek applicants with Briscoe's qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802; *Burns v. Town of Gorham*, 122 N.H. 401, 406–07, 445 A.2d 1111, 1114 (1982).

■ The commission found that Briscoe had satisfied the four elements of a prima facie case. A presumption of discrimination then arose, and the burden shifted to Swett to produce evidence that Briscoe was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. *See Burns v. Town of Gorham*, 122 N.H. at 408, 445 A.2d at 1115 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). The commission expressly declined to credit the testimony of Swett's project superintendent and its timekeeper that they did not know that Briscoe had training and experience as a carpenter, and that he first came to the Lisbon site in the middle of May and not before. The commission did so in view of Briscoe's testimony and other evidence he presented, including witnesses who testified that they had accompanied Briscoe to the Lisbon site prior to the middle of May 1979.

Swett argues that the testimony of Swett's witnesses was that they *did not recall* Briscoe applying before the middle of May, which implies that Briscoe was simply overlooked and thus the victim of an innocent error. However, Swett argues, even if the commission did not credit this testimony, a disbelief of Swett's credibility is an inadequate basis upon which to find intentional discrimination on the basis of race which is the ultimate burden Briscoe bears. We disagree.

■■ Direct proof of discriminatory intent may be difficult. The prima facie case serves as a means by which proof of discriminatory intent can be inferred from circumstantial evidence. *See* Brodin, *The Standard of Causation in the Mixed-Motive Title VII Action: A Social Policy Perspective*, 82 COLUM. L. REV. 292, 299–300 (1982). "Prima facie case," in the context of employment discrimination, is used in the sense of a legally mandatory, rebuttable presumption. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. at 254 n.7. Therefore, if the employer fails to rebut it, the legally mandatory

presumption of intentional discrimination prevails and judgment is for the complainant. *See id.* at 254.

■■ To satisfactorily rebut a prima facie showing of discrimination, Swett must "articulate some legitimate, nondiscriminatory reason for [Briscoe's] rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802. We believe that implicit in this burden is the requirement that Swett's evidence must also be credible. "'[A] "prima facie" case so made out need not be overcome by a preponderance of the evidence, or by evidence of greater weight; but the evidence needs only to be balanced, put in equipoise, by some evidence *worthy of credence* . . . .'" 9 J. WIGMORE, EVIDENCE § 2487 at 297 (Chadbourn rev. 1981) (quoting *Speas v. Merchants' Bank & Trust Co.*, 188 N.C. 524, 530, 125 S.E. 398, 401 (1924)) (emphasis added); *see United States Postal Service Bd. of Governors v. Aikens*, 103 S. Ct. 1478, 1481 n.3 (1983); C. McCORMICK, HANDBOOK OF THE LAW OF EVIDENCE § 345, at 821 n.40 (2d ed. 1972).

■■ We note that "[a] *McDonnell Douglas* prima facie showing is not the equivalent of a factual finding of discrimination" and that "the employer must be allowed some latitude to introduce evidence which bears on his motive." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 579–80 (1978). Swett objects to the commission's rejection of what Swett views as relevant evidence bearing on Swett's motivation. Specifically, the commission rejected as irrelevant a favorable EEO Compliance Review from 1977 (two years before the time in question) of a project that employed another black construction worker and which was supervised by the same hiring superintendent as the Lisbon project. We point out, however, the commission's subsequent acknowledgment in its Finding of Fact #5 that "[a]s of October 24, 1979, Respondent [Swett] had never received an unsatisfactory review." We also note that the commission accepted into evidence letters from the training director of The Associated General Contractors of New Hampshire, Inc., which included praise for Swett's efforts in putting minorities to work. In light of this, we cannot conclude that the commission failed to consider evidence bearing on Swett's motivation. Furthermore, while evidence of prior nondiscriminatory employment practices with regard to other minority individuals has some relevance in negating an inference of discriminatory motive, such evidence does not, by itself, rebut the presumption of discrimination raised by Briscoe's prima facie case. *See Cross v. United States Postal Service*, 639 F.2d 409, 414 (8th Cir. 1981).

■ We conclude that Briscoe's ultimate burden of persuading

the trier of fact that he was the victim of intentional discrimination is satisfied by a prima facie showing, unrebutted by credible evidence that he was rejected for some other reason. We further conclude that the commission understood and applied this standard, and that its finding of discrimination is supported by sufficient evidence on the record considered as a whole. We therefore affirm this finding and the award of back pay.

The final two issues raised concern the authority of the commission to award compensatory damages and attorney's fees to a successful complainant. RSA 354-A:9, II, states in pertinent part:

> "[T]he commission shall state its findings of fact and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such affirmative action, including (but not limited to) hiring, reinstatement or upgrading of employees, with or without back pay, restoration to membership in any respondent labor organization, or the extension of full, equal and unsegregated accommodations, advantages, facilities and privileges to all persons, as in the judgment of the commission, will effectuate the purpose of this chapter and including a requirement for report of the manner of compliance. . . ."

While conceding that compensatory damages and attorney's fees are not expressly authorized by RSA 354-A:9, II, Briscoe and the commission argue that these types of awards are well within the commission's authority, as stated there, to require Swett "to take such affirmative action . . . as in the judgment of the commission, will effectuate the purpose of this chapter." Counsel urges that both RSA 354-A:1 (Supp. 1981) and RSA 354-A:13 (Supp. 1981) are support for interpreting RSA 354-A:9, II, as a broad grant of power. RSA 354-A:1 (Supp. 1981) is labeled "Purposes of Chapter" and is a strong legislative pronouncement against the evils of discrimination. RSA 354-A:13 (Supp. 1981) states in part that "[t]he provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof."

We agree that awards of compensatory damages and counsel fees would be consistent with effectuating the elimination and prevention of discrimination. However, we decline to interpret the relief authorized by RSA 354-A:9, II, as broadly as counsel for Briscoe and the commission suggest. Although the statute states "such affirmative action, *including (but not limited to)*" (emphasis added)

and it is argued that these words are expansive rather than restrictive, we note that the varied examples of relief which RSA 354-A:9, II, does expressly authorize the commission to order are all equitable in nature. We decline to hold that this statute enlarges the commission's authority so as to encompass other forms of relief such as compensatory damages. Notwithstanding the fact that other jurisdictions have interpreted identical or similar provisions as allowing compensatory damages, we prefer to await a more express indication from the legislature that its intent is indeed to authorize the commission to award compensatory damages.

 We hold, however, that RSA 354-A empowers the commission to award reasonable attorney's fees. Although the statute does not expressly authorize the award of attorney's fees, their award in appropriate cases is consistent with the discretion granted the commission in fashioning equitable remedies in view of the legislative purpose behind the statute.

*Affirmed in part and reversed in part.*

SOUTER, J., did not sit; DOUGLAS, J., dissented in part; the others concurred.

DOUGLAS, J., dissenting in part: I respectfully disagree with the majority opinion wherein it declines to find that RSA chapter 354-A authorizes the commission to award compensatory damages.

RSA chapter 354-A was enacted as a broad legislative scheme designed to eradicate the evil of unlawful discrimination. In a strong declaration of purpose, the legislature found and declared:

> "that practices of discrimination against any of its inhabitants because of age, sex, race, creed, color, marital status, physical or mental handicap or national origin are a matter of state concern, that such discrimination not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants."

RSA 354-A:1 (Supp. 1981).

Accordingly, the legislature declared it an unlawful discriminatory practice to deny employment, labor organization membership, housing accommodations, public accommodations and the advantages, facilities and privileges thereof on the basis of age, sex, race, creed, color, marital status, physical or mental handicap or national origin. RSA 354-A:8 (Supp. 1981).

To effectuate the purposes of the act, the New Hampshire Commission for Human Rights was created and authorized "to eliminate and prevent discrimination" and "was given general jurisdiction and power for such purposes." RSA 354-A:1 (Supp. 1981). More specifically, RSA 354-A:9 (Supp. 1983) authorizes the commission, after finding that an unlawful discriminatory practice has been engaged in, to issue a cease and desist order and "*to take such affirmative action, including (but not limited to)* hiring, reinstatement, or upgrading employees, with or without back pay . . . *as in the judgment of the commission, will effectuate the purposes of this chapter. . . .*" (Emphasis added.)

There can be no doubt that the legislature intended to empower the commission with the authority to fight discrimination by giving it the tools with which to effectively implement the policy of eliminating and preventing discrimination. First, by using the phrase "including but not limited to," the legislature implies that measures other than those specified in the statute may be taken by the commission. Moreover, broad discretion to fashion remedies is accorded to the commission by the legislative directive that the commission "take such affirmative action . . . as in [its] judgment will effectuate the purposes of this chapter."

The legislature's stated purpose in enacting RSA chapter 354-A was to eliminate and prevent unlawful discrimination. This court previously has stated that the purpose of RSA chapter 354-A is to make the victims of unlawful discrimination "whole." *Burns v. Town of Gorham*, 122 N.H. 401, 410–11, 445 A.2d 1111, 1116 (1982). Thus, RSA chapter 354-A seeks to prevent future unlawful discriminatory practices and to redress injuries. The award of compensatory damages fulfills the purposes of the statute.

Pecuniary loss and mental anguish can be effects of discrimination. A victim is made "whole" when he or she is compensated for injuries, such as pecuniary loss and mental anguish, resulting from the discriminatory practice. The award of compensatory damages will serve to eliminate the effects of discrimination, prevent future discriminatory practices and ensure that victims of unlawful discrimination are truly made "whole." Hence, such an award is within the commission's legislative authority to take such action as will effectuate the purposes of the act.

Further support for the conclusion that RSA chapter 354-A authorizes the commission to award compensatory damages is found in RSA 354-A:13 (Supp. 1983), which provides, in pertinent part, that:

> "the procedure herein provided shall, while pending, be exclusive and the final determination therein shall exclude

any other action, civil or criminal, based on the same grievance of the individual concerned."

In *Howard v. Dorr Woolen Company*, 120 N.H. 295, 297, 414 A.2d 1273, 1274 (1980), we held that the proper remedy for unlawful discrimination is statutory, citing RSA chapter 354-A. If the commission is denied the authority to award compensatory damages under the statute, victims of unlawful discrimination will be barred from receiving complete compensation for their injuries. This result is not only inconsistent with the purpose of the statute and our previous ruling in *Burns v. Town of Gorham*, 122 N.H. 401, 445 A.2d 1111 (1982), but it also violates part I, article 14 of our State Constitution wherein our citizens are guaranteed the right to a remedy that properly compensates them. N.H. CONST. pt. I, art. 14.

Other States, construing language similar to that in our statute, have authorized the award of compensatory damages to victims of unlawful discrimination. *E.g., A. P. Green Services Div. of Bigelow-Liptak Corp. v. State Fair Employment Practices Com.*, 19 Ill. App. 3d 875, 312 N.E.2d 314 (1974); *Bournewood Hospital, Inc. v. Massachusetts Com. Against Discrimination*, 358 N.E.2d 235 (Mass. App. 1976); *Williams v. Joyce*, 479 P.2d 513 (Or. App. 1971); *Jackson v. Concord*, 54 N.J. 113, 253 A.2d 793 (1969); *State Human Rights Com. v. Pauley*, 212 S.E.2d 77 (W. Va. 1975). A review of the rationale of these decisions also convinces me that the award of compensatory damages is authorized by RSA chapter 354-A.