Department of Labor
No. 91-148

APPEAL OF BIO ENERGY CORP.

(New Hampshire Department of Labor)

May 5, 1992

*Brown, Olson & Wilson P.C.*, of Concord (*Bryan K. Gould* on the brief and orally), for the petitioner.

Linda Baron, *pro se*, filed no brief.

*John P. Arnold*, attorney general (*David S. Peck*, senior assistant attorney general, on the brief, and *William McCallum*, attorney, orally), for the State as *amicus curiae*.

JOHNSON, J.   Bio Energy Corp. (Bio Energy) appeals the decision of the department of labor (DOL) that Bio Energy violated the Whistleblowers' Protection Act (the Act), RSA chapter 275-E, and its award of $7,000 in lost wages to Bio Energy's former employee, Linda Baron. For the reasons that follow, we affirm.

Linda Baron worked as office coordinator and computer operator for Bio Energy from September 1987, until she was discharged on April 10, 1990. In March 1990, Ms. Baron was a salaried employee. On March 2, 1990, Ms. Baron took a sick day, and Bio Energy deducted a day's wages from her salary. On March 14, Ms. Baron complained to her supervisor that this deduction violated State law, and gave her supervisor a copy of the DOL's *Administrative Rules for Payment of Wages and Youth Employment* (Administrative Rules). Ms. Baron did not report the alleged violation to anyone other than her employer prior to her termination.

Bio Energy paid Ms. Baron the salary it had deducted and then discharged her on April 10, 1990. In its memorandum of termination, Bio Energy alleged to Ms. Baron that the causes of her dismissal were excessive absenteeism, unauthorized overtime, failure to follow instructions, and an episode in which she "punched in" early from lunch, thus creating what her employer deemed "unauthorized overtime."

On April 13, 1990, Ms. Baron filed a complaint with the DOL, alleging that Bio Energy had terminated her because she had brought to her supervisor's attention Bio Energy's alleged violation of the Administrative Rules. In its decision of January 15, 1991, the DOL found that Ms. Baron was terminated because she reported to her employer what she reasonably believed to be a violation of State law, that she acted in good faith, and that she was wrongfully discharged. These findings are not challenged on appeal.

Ms. Baron was out of work for fourteen weeks after her termination before she obtained another job. The DOL awarded her injunctive relief in the form of a mandatory injunction requiring payment of $7,000 back pay for the time she was unemployed.

Bio Energy argues on appeal that Ms. Baron was not entitled to protection under the Act because she did not report her employer's allegedly unlawful conduct to a third party or governmental authority. Alternatively, Bio Energy argues that even if she was protected by the Act, the DOL cannot award back pay because back pay consti-

tutes damages, and the Act limits remedies to injunction, reinstatement and recovery of seniority and fringe benefits.

I. *Duty to Report to a Third Party*

RSA 275-E:2, I (Supp. 1991) provides in relevant part that

"I. No employer shall discharge, threaten, or otherwise discriminate against any employee regarding such employee's compensation, terms, conditions, location, or privileges of employment because:

(a) The employee, in good faith, reports or causes to be reported, verbally or in writing, what the employee has reasonable cause to believe is a violation of any law or rule adopted under the laws of this State, a political subdivision of this state, or the United States . . . ."

The above paragraph fails to specify to whom a report of an alleged violation must be made. Paragraph II of RSA 275-E:2 (Supp. 1991) contains the requirement, as follows, that in most circumstances the employee must first bring the alleged violation to the attention of the employer:

"II. Paragraph I of this section shall not apply to any employee unless the employee first brought the alleged violation to the attention of a person having supervisory authority with the employer, and then allowed the employer a reasonable opportunity to correct that violation, unless the employee had specific reason to believe that reporting such a violation to his employer would not result in promptly remedying the violation."

Bio Energy argues that, when read together, paragraphs I and II of RSA 275-E:2 (Supp. 1991) require an employee to report a violation of law to a third party before she is entitled to protection under the Act. We reject that construction as contrary to the manifest purpose of the Act.

Paragraph I of RSA 275-E:2 (Supp. 1991) does not require that an employee report a potential violation of law to a third party. By its very terms, it covers reports made either to employers or to third parties. Paragraph II of RSA 275-E:2 (Supp. 1991) sets forth the mode of compliance with the statute. Specifically, an employee must first notify the employer of any violation before reporting to a higher authority. The requirement that the employee first notify the employer is a significant benefit to employers and furthers the purpose of the Act. Giving the employer the first opportunity to correct a

violation allows it to avoid harm to its reputation, the burden of undergoing an investigation, preparation for a hearing, etc. Informal resolution of infractions also saves the DOL both time and resources.

We cannot accept Bio Energy's argument that the legislature intended that paragraph II of the Act require a further report to a third party. Under Bio Energy's interpretation of the Act, employers would be able to retain the benefit of notification, while avoiding the burdens imposed if the employee were discharged because of his or her notification to the employer. Such an interpretation would thwart the Act's primary purpose of encouraging employees to report their employers' violations of law.

Ms. Baron complied with the Act. The DOL found that she was discharged because she reported, in good faith, what she reasonably believed to be a violation of a DOL administrative rule. *See* RSA 275-E:2, I(a) (Supp. 1991). She informed her supervisor of Bio Energy's violation of the rule and allowed her employer a reasonable opportunity to correct the violation, which violation her employer corrected. Bio Energy argues that the "report" referred to in paragraph I must be made to someone other than the employer, because paragraph II requires the employee to "first" bring the violation to the employer's attention. Bio Energy contends that there would be no need for the requirement of a "first" report to the employer if the statute did not contemplate a further report to a third party.

To require a report to a third party or governmental authority where, as here, the initial report results in corrective action is to require the doing of a useless act. Once Bio Energy paid Ms. Baron the disputed wages, she had nothing to report. Had Bio Energy not wrongfully discharged her, the Act would have resulted in the very result that the legislature contemplated, namely a report of a violation by an employee and corrective action by the employer. The interpretation argued by Bio Energy undermines the deterrent effect of the Act; a reading of the statute that required a second report would leave employees such as Ms. Baron unprotected, despite the statute's clear intent to protect such employees from wrongful discharge.

■ Moreover, adoption of Bio Energy's argument would essentially destroy the effectiveness of paragraph II. Employees would have an incentive to invoke the exception found in paragraph II ("unless the employee had specific reason to believe that reporting such a violation to his employer would not result in promptly remedying the violation") and report directly to a third party without first giving

the employer an opportunity to correct the violation. Even if many of the ensuing complaints would be dismissed for failure to comply with paragraph II, employers would be harmed by the publication of their violations. We construe statutes so as to effectuate their evident purpose. *Quality Carpets v. Carter,* 133 N.H. 887, 889, 587 A.2d 254, 255 (1991). The construction that Bio Energy advances is so inconsistent with the evident purpose of the Act as to render it impotent.

■ We wish to promote the dual purposes of the Act—to encourage employees to come forward and report violations without fear of losing their jobs and to ensure that as many alleged violations as possible are resolved informally within the workplace. Therefore, we hold that whenever an employee begins the process of complying with the Act, as specified in RSA 275-E:2, II (Supp. 1991), he or she is protected under it, whether the violation is cured after notification of the employer, or whether the employee further reports the violation to a higher authority.

## II. *Back Pay*

The DOL ruled that "the claimant is due injunctive relief, under RSA 275-E:4, I (Supp. 1991), in the amount of $7,000.00." Bio Energy now challenges that characterization of the back pay award, arguing that back pay is a form of damages and, therefore, not permitted under the terms of RSA 275-E:4, I (Supp. 1991). RSA 275-E:4, I (Supp. 1991) authorizes the DOL to order "reinstatement of the employee, the payment of fringe benefits and seniority rights, *any* appropriate injunctive relief, or any combination of these remedies." (Emphasis added.)

■ The purpose of a back pay award is to make a victim of unlawful discrimination whole by putting her in the position she would have been in absent unlawful discrimination. *Burns v. Town of Gorham,* 122 N.H. 401, 409, 445 A.2d 1111, 1116 (1982). The characterization of the back pay award depends not upon the amount awarded, but upon the purposes that motivated the award. An award of back pay given in the public interest in vindication of public rights is not an award of damages. *Id.* "A victim of discrimination is made 'whole' when she is awarded back pay from the date on which the unlawful discrimination occurred until employment actually begins." *Id.* at 410, 445 A.2d at 1116.

■ Moreover, the evident purpose of the Act leads us to the conclusion that back pay is an indispensable facet of the DOL's injunctive power, *see Quality Carpets,* 133 N.H. at 889, 587 A.2d at 255. The

prospect of several months of unemployment without pay may be just as daunting to an employee as the prospect of losing one's job altogether. If employees are to be encouraged to report illegal acts, they must have assurance that they will not be punished monetarily. Unless an award of back pay is part of the injunctive remedy, any employee who blows the whistle will know that if she is discharged, she will inevitably suffer a substantial period of unemployment without pay since administrative resolution of the dispute will not be settled immediately. Reluctance to suffer such hardship would deter employees from going forward and frustrate the purpose of the Act.

The lack of a back pay remedy also would weaken the deterrent effect of the Act vis-a-vis employers. Employers would have little incentive to comply with the Act if they faced only the prospect of future reinstatement of an employee. In this case, if back pay were not permitted, Bio Energy would face no sanction whatsoever, since Ms. Baron found alternative employment in the interim.

On the other hand, authorizing the DOL to vindicate public rights by putting a wrongfully discharged employee in the same position she would have been in had the employer acted lawfully furthers the legislative purpose of the Act. An employee is more likely to report violations if she knows that should she lose her job, she will not only be reinstated, but will also receive back pay. Similarly, an employer is more likely to take pains to comply with the Act if it knows that the DOL can order back pay to the wrongfully discharged employee.

Finally, RSA 275-E:4 (Supp. 1991) authorizes the DOL to reinstate an employee and also order "the payment of fringe benefits. . . ." If only reinstatement, without back pay, were contemplated, it would make little sense for the legislature to authorize the relatively minor payment of fringe benefits and not to authorize the major benefit of back wages. *See Foster v. Town of Henniker*, 132 N.H. 75, 82, 562 A.2d 163, 168 (1989) (statutes should not be interpreted to produce illogical results). An award of back pay was properly within the DOL's broad injunctive powers.

*Affirmed.*

HORTON, J., with whom THAYER, J., joined, dissented; the others concurred.

HORTON, J., dissenting: The interesting question here is to whom must the whistle be blown. As noted in the majority opinion, the legislature has not spoken on this point. Many legislatures have. *See* ALASKA STAT. § 39.90.100(a)(1) (Supp. 1991) (to a public body); FLA. STAT. ch. 112.3187(6) (1991) (to any agency or federal government

entity possessing authority to investigate, police, manage, or otherwise remedy the violation or act); HAW. REV. STAT. § 378-62(1) (Supp. 1991) (to a public body); ME. REV. STAT. ANN. tit. 26, § 833 (West 1988) (to the employer or a public body, but initial report must be made to employer); MICH. COMP. LAWS ANN., § 15.362 (West 1981) (to a public body); OHIO REV. CODE ANN. § 4113.51 (Anderson 1991) (to the employer first and then an appropriate public official if the employer fails to take corrective action); R.I. GEN. LAWS § 36-15-3 (1990) (to a public body); V.I. CODE ANN. tit. 10, § 122 (Supp. 1989) (to a public body).

I put aside what I believe to be the generally accepted concept of "whistleblowing": the telling of tales out of school as opposed to discussing problem violations with one's employer. After reviewing our statute, I am unable to agree with the majority that our legislature intended that the "report" which triggers protection under RSA 275-E:2, I(a) (Supp. 1991) includes the act of bringing the alleged violation to the attention of the "reporter's" own employer. RSA 275-E:2 (Supp. 1991) has two paragraphs. Paragraph I is the operative section and it affords protection for the "whistleblower." This operative paragraph, however, is *not applicable* unless the condition precedent described in paragraph II is satisfied. To gain the protection of paragraph I, the employee must have reported the violation, but first, and prior to making such a report, the employee must bring the alleged violation to the attention of his or her employer, *and* allow the employer a reasonable opportunity to correct the violation.

In this case, the alleged act triggering the paragraph I protection was a "report" to the employer. The employer in fact corrected the violation. No further "report" was made. It strains logic to say that the "report," required by paragraph II to invoke paragraph I, can be one and the same as the report which invokes the protection under paragraph I. If the employer corrects the alleged violation, there is nothing to report.

The findings of the department of labor in this case included a finding of retaliatory discharge. This is a wrong that might well be remedied at common law. *See Cloutier v. A. & P. Tea Co., Inc.*, 121 N.H. 915, 920–21, 436 A.2d 1140, 1143 (1981); *Howard v. Dorr Woolen Company*, 120 N.H. 295, 297, 414 A.2d 1273, 1274 (1980); *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 133, 316 A.2d 549, 551 (1974). RSA 275-E:2 (Supp. 1991) does not apply. I would reverse.

THAYER, J., joins in the dissent.