Sweepstakes Commission
No. 2004-094

APPEAL OF FRANKLIN LODGE OF ELKS #1280 BPOE
(New Hampshire Sweepstakes Commission)

Argued: October 13, 2004
Opinion Issued: December 28, 2004

*Kacavas Law Offices, P.L.L.C.,* of Manchester (*John P. Kacavas* on the brief and orally), for the petitioner.

*Kelly A. Ayotte,* attorney general (*Wynn E. Arnold,* senior assistant attorney general, on the brief and orally), for the New Hampshire Sweepstakes Commission.

DALIANIS, J. The petitioner, the Franklin Lodge of Elks #1280 BPOE (Lodge), appeals from a decision of the New Hampshire Sweepstakes Commission (commission) declaring it ineligible to apply for a "lucky 7" license pursuant to RSA 287-E:5, V(c) (Supp. 2004) and RSA 287-E:7, VI (Supp. 2004). We affirm.

On September 25, 2000, the Lodge pled guilty to three class A misdemeanor counts of illegal gambling activity. *See* RSA 647:2 (1996); RSA 625:9, IV(a)(2) (1996). The Superior Court (*McGuire,* J.) imposed a suspended fine and ordered the Lodge to do community service. At the time of the conviction, the Lodge was licensed to operate "bingo" games and sell lucky 7 tickets, which licenses were applied for and reissued on a monthly basis. *See* RSA 287-E:5, IV (1999). However, as a result of the conviction, the Lodge lost its permission to conduct bingo games because both former RSA 287-E:5, V(c) (1999) (amended 2003) and former RSA 287-E:7, VI (1999) (amended 2003), then in effect, prohibited persons who had been convicted of any criminal offense from applying for a license to operate a bingo game or from participating in the operation of a bingo game.

RSA 287-E:5, V(c) and RSA 287-E:7, VI were amended in 2003. The statutes now prohibit persons who have been convicted of a felony or class A misdemeanor within the previous ten years from applying for a license to operate a bingo game or a license to sell lucky 7 tickets and from participating in the operation of a bingo game or the sale of lucky 7 tickets. RSA 287-E:5, V(c); RSA 287-E:7, VI. In light of the amendment, on December 11, 2003, the commission held a hearing on the Lodge's eligibility to sell lucky 7 tickets. On December 19, 2003, the commission ordered that the Lodge was "ineligible for licensing effective at the time the current [lucky 7] license expires on December 31, 2003," and thus its lucky 7 license would not be renewed.

The Lodge appeals from the ruling of the commission, *see* RSA 541:6 (1997), arguing that the use of its convictions for illegal gambling, where the acts constituting the convictions occurred prior to the effective date of the amended versions of RSA 287-E:5, V(c) and RSA 287-E:7, VI, violates

the New Hampshire Constitution's prohibition against the retrospective application of laws, *see* N.H. CONST. pt. I, art. 23, because it imposes a new disability by augmenting the civil sanction attached to a past transaction. Though the commission based its decision upon both RSA 287-E:5, V(c) and RSA 287-E:7, VI, the Lodge appealed only the application of RSA 287-E:7, VI. Nonetheless, we will analyze both statutes because they are inextricably intertwined, the State addresses both in its brief, and analyzing them together will not affect the substance or outcome of this opinion.

We will not disturb the commission's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable. RSA 541:13 (1997); *see also Appeal of Fay*, 150 N.H. 321, 324 (2003). Our only concern in this case is whether the commission committed an error of law. We review the commission's interpretation of statutes and the constitution *de novo*. *Linehan v. Rockingham County Comm'rs*, 151 N.H. 276, 278 (2004).

The Lodge argues that our ruling in *State v. Vashaw*, 113 N.H. 636 (1973), is dispositive of this case because the Lodge interprets that decision as "requir[ing] the commission of an offense *after* [the] effective date" of the challenged statute. We disagree.

In *Vashaw* we interpreted a statute that required the license of a motor vehicle operator to be revoked for a period of four years if that operator was convicted of three listed offenses within a ten-year period. *Vashaw*, 113 N.H. at 637. The defendant in *Vashaw* had been convicted of driving under the influence two times prior to the effective date of the statute. The defendant was then convicted of driving without a license three years after the effective date of the statute. All three offenses were listed offenses and occurred within a ten-year period. *Id.* In upholding the trial court's decision, we relied upon the principle that the underlying policy of Part I, Article 23 is to prevent the legislature from interfering with the expectations of persons as to the legal significance of their actions taken prior to the enactment of a law, and found dispositive the fact that the statute specifically required a motor vehicle violation *after* the effective date in order to activate its provisions, putting the defendant on notice as to the legal effect of a third conviction. *Id.* at 637-38.

Although the commission's application of RSA 287-E:5, V(c) and RSA 287-E:7, VI was not, as in *Vashaw*, triggered by the occurrence of an offense after the effective date of the statutes, its application does not violate Part I, Article 23 because the statutes at issue are remedial in nature. "It was early held that 'every statute, which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation,

imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective . . . .'" *Pepin v. Beaulieu*, 102 N.H. 84, 89 (1959) (quoting *Woart v. Winnick*, 3 N.H. 473, 479 (1826)). However, a retrospective statute does not contravene Part I, Article 23 of the State Constitution if it affects the remedy only and is not oppressive or unjust. *Pepin*, 102 N.H. at 89-90; *see also Wallace v. Stearns*, 96 N.H. 367, 369 (1950). "In general terms, decisional law long has recognized the authority of a governmental licensing entity to examine and determine, from the past conduct of a party, his or her fitness to undertake or continue a business or profession." *Hughes v. Board of Architectural Examiners*, 952 P.2d 641, 656 (Cal. 1998).

We examine whether the statutes at issue are remedial or punitive in nature. "The purpose of remedial legislation is to promote justice and advance the public welfare and important and beneficial public objects." 73 AM. JUR. 2D *Statutes* § 8, at 234 (2001). In deciding whether or not a law is penal in nature, the United States Supreme Court has stated:

> [T]his Court has generally based its determination upon the purpose of the statute. If the statute imposes a disability for the purposes of punishment—that is, to reprimand the wrongdoer, to deter others, etc.—it has been considered penal. But a statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose. The Court has recognized that any statute decreeing some adversity as a consequence of certain conduct may have both a penal and a nonpenal effect. The controlling nature of such statutes normally depends on the evident purpose of the legislature. The point may be illustrated by the situation of an ordinary felon. A person who commits a bank robbery, for instance, loses his right to liberty and often his right to vote. If, in the exercise of the power to protect banks, both sanctions were imposed for the purpose of punishing bank robbers, the statutes authorizing both disabilities would be penal. But because the purpose of the latter statute is to designate a reasonable ground of eligibility for voting, this law is sustained as a nonpenal exercise of the power to regulate the franchise.

*Trop v. Dulles*, 356 U.S. 86, 96-97 (1958); *see also Meinders v. Weber*, 604 N.W.2d 248, 255 (S.D. 2000). "[I]f the purpose of a licensing statute is not to punish but to serve another legitimate governmental purpose, such as protecting the consumers and the public who deal with members of a

particular profession or trade, the statute is considered nonpenal." *Hughes*, 952 P.2d at 656.

We find instructive the case of *Patel v. Thompson*, 319 F.3d 1317 (11th Cir. 2003). In 1997, Dr. Patel pled *nolo contendere* to one count of sexual battery that he had committed in 1996. *Patel*, 319 F.3d at 1318. On June 12, 1998, the United States Department of Health and Human Services (HHS), pursuant to its regulations, notified Patel that he would be excluded from participating in federally-funded medical programs for a period of five years, which exclusion could be increased if certain aggravating factors were found. *Id.* at 1318-19. In October 1998, the regulations were amended, providing new aggravating factors. *Id.* at 1319. Under the new aggravating factors, HHS determined that Patel would be excluded for an additional five years. *Id.* Patel argued that the "application of these 1998 additions was improper because they were not put in the regulations until *after* his 1996 conduct and thus created an impermissible increase of his liability in 'violation of law under the anti-retroactivity principle.'" *Id.* The Eleventh Circuit Court of Appeals found that the application of the new regulations did not implicate retroactivity concerns because the exclusionary period provided by the underlying statute was remedial in nature. *Id.*

■ As in *Patel*, the exclusionary period in this case is remedial, rather than punitive, in nature. The New Hampshire legislature established a ten-year exclusionary period during which those who have committed felonies and class A misdemeanors are ineligible to apply for a license to sell lucky 7 tickets or participate in the sale of lucky 7 tickets. In doing so, the legislature acted with the remedial purpose of protecting the public by designating a reasonable ground for determining the eligibility of those who wish to conduct legal gambling operations in New Hampshire. As we conclude that the legislature has designated a reasonable ground for determining eligibility, we further conclude that the application of the statute is neither oppressive nor unjust. As such, the commission's determination that the Lodge was ineligible to apply for a license to sell lucky 7 tickets is not contrary to the constitutional prohibition against the retrospective application of laws.

The Lodge argues, however, that even if the application of the statutes does not violate the constitutional prohibition against the retrospective application of laws, the commission misinterpreted the statutes as referring to pre-enactment felony and class A misdemeanor convictions. The Lodge contends that the statutes were meant to apply only to those who committed crimes after the effective date of the legislation because

the legislature did not manifest an intent that the laws operate retrospectively.

We are the final arbiter of the meaning of a statute as expressed in the words of the statute itself. When construing the meaning of a statute, we first examine the language found in the statute and, where possible, ascribe the plain and ordinary meanings to words used. When the language used in the statute is clear and unambiguous, its meaning is not subject to modification by judicial construction. *Petition of Beauregard*, 151 N.H. 445, 447 (2004).

We do not disagree with the Lodge's claim that the statutes at hand are to be applied prospectively; rather, we disagree with the Lodge's conclusion that the statutes were not meant to apply to it. The protections provided for in RSA chapter 287-E apply *prospectively* to protect *current* and *future* patrons of bingo games and purchasers of lucky 7 tickets by regulating the *current* and *future* eligibility of those who wish to conduct or participate in these activities after the effective date of the statute. The Lodge's argument that the statutes do not include crimes committed prior to the effective date of the statutes, however, is contrary to the plain language of the statutes, which requires that no person who has been convicted of a felony or class A misdemeanor within the previous ten years be eligible to apply for licensure or to participate in the operation of bingo games or the sale of lucky 7 tickets. *See* RSA 287-E:5, V(c); RSA 287-E:7, VI. The Lodge has pointed to nothing in the legislative history to indicate that the legislature meant to exclude those persons who had been convicted of a felony or class A misdemeanor prior to the effective date of the statutes from the reach of the statutes. Therefore, we conclude that the commission correctly interpreted the statutes and properly used the Lodge's three-year-old criminal convictions to determine that the Lodge was ineligible to apply for a license to sell lucky 7 tickets.

Finally, we note that the Lodge argues that the revocation provision of RSA 287-E:14 (1997) conflicts with application of the two statutes at issue in this case. The Lodge misinterprets the effects of the two statutes at issue. RSA 287-E:14 provides: "The commission may suspend or revoke the license of any licensee who violates any provision of this subdivision. Any licensee whose license is revoked shall not be eligible for licensure for a period of up to one year from the date of revocation." Unlike RSA 287-E:14, RSA 287-E:5, V(c) does not operate to revoke a licensee's license; rather, it operates to make a person ineligible to apply for a license. Similarly, RSA 287-E:7, VI, does not operate to revoke a licensee's license; rather, it operates to make a person ineligible to operate or participate in

the operation of a bingo game or sell or participate in the sale of lucky 7 tickets.

*Affirmed.*

NADEAU, DUGGAN and GALWAY, JJ., concurred.